IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS (Harrison)

IN RE:  BILLY G. SCALLORN,                                          CASE NO. 3:22-bk-70129
        Debtor                                                                              CHAPTER 13

**MOTION FOR RELIEF FROM STAY OR, IN THE
ALTERNATIVE, FOR ADEQUATE PROTECTION**

COMES NOW CS Bank, by and through its attorneys, FRIDAY, ELDREDGE & CLARK, LLP, and for its Motion for Relief from Stay or, in the Alternative, for Adequate Protection, states as follows:

I. BACKGROUND

1.    CS Bank ("**CS**") is a secured creditor and interested party herein.

2.    CS filed a Verified Complaint for Foreclosure & Personal Judgment & Petition for Order of Delivery in the Circuit Court of Carroll County, Arkansas on October 22, 2021 (the "**Foreclosure Action**"). A true and correct copy of the Foreclosure Complaint is attached hereto as **Exhibit "1"** and incorporated by reference herein.

3.    This is Billy G. Scallorn's (hereinafter, the "**Debtor**") second case in a five-month period. The Debtor filed a Chapter 13 on November 11, 2021 (Case No. 3:21-bk-71598) (the "**2021 Case**"). He initiated that case by filing a skeleton petition, a copy of which is attached hereto as **Exhibit "A"**[1] and is incorporated by reference herein.

4.    The Debtor's schedules and plan were never filed in the 2021 Case, which was ultimately dismissed on January 18, 2022, for failure to pay the filing fee.

---

[1] All exhibits referenced by letter and incorporated by reference are exhibits to the Foreclosure Complaint attached hereto as Exhibit 1.

5. The Debtor initiated this case by filing another skeleton petition on February 9, 2022 (the "**2022 Case**"). He filed his first motion requesting an extension of time to file his schedules and plan on February 25, 2022, with the most recent motion being filed on March 21, 2022. To date, the filing fee has not been paid.

6. From May 2018 to November 2020, CS extended six loans to the Debtor.

**A. The 175 Loan**

7. On or about May 14, 2018, CS extended to Debtor a loan bearing loan number 70002175 in the original principal amount of $166,859.95 (the "**175 Loan**").

8. In connection with the 175 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $166,859.95 (the "**175 Note**"). A true and correct copy of the 175 Note is attached hereto as **Exhibit A** and incorporated herein by reference.

9. To secure payment of the indebtedness represented by the 175 Note, Debtor executed a Mortgage (the "**175 Mortgage**") which created a lien in favor of CS on and against that certain real property located in Berryville, Carroll County, Arkansas, as set forth below. A true and correct copy of the 175 Mortgage is attached hereto as **Exhibit B** and incorporated herein by reference.

10. The property encumbered by the 175 Mortgage is legally described as follows:

Lots 1 and 2, John Michael Acres Subdivision, Carroll County, Arkansas, as per plat recorded in Plat Cabinet E Slide 132A, of the records of the Eastern District, Carroll County, Arkansas.

(the "**Residential Real Property**"). The Residential Real Property's street address is commonly known as 239 CR 426, Berryville, Arkansas 72616.

11. The 175 Mortgage, after being duly executed and acknowledged, was filed for record in the Office of the Circuit Clerk and Ex-Officio Recorder for Carroll County, Arkansas, on May 15, 2018, at Book 2018 Page 3311.

12. The 175 Note, the 175 Mortgage, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 175 Loan are hereinafter collectively referred to as the "**175 Loan Documents**."

**B. The 322 Loan**

13. On or about September 11, 2019, CS extended to Debtor a loan bearing loan number 80301322 in the original principal amount of $20,000.00 (the "**322 Loan**"). The 322 Loan is evidenced by that certain Commercial Loan Agreement of the same date (the "**322 Loan Agreement**"), a true and correct copy of which is attached hereto as **Exhibit C** and incorporated by reference.

14. In connection with the 322 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $20,000.00 (the "**Original 322 Note**"). A true and correct copy of the Original 322 Note is attached hereto as **Exhibit D** and incorporated herein by reference.

15. The Original 322 Note was modified by those certain Promissory Note Renewal Notes (a) dated September 11, 2019; (b) September 11, 2020; and (c) September 11, 2021, all by and between CS and Debtor (together, the "**322 Note Renewals**," together with the Original 322 Note, the "**322 Note**"). A true and correct copy of the 322 Note Renewals are attached hereto as **Exhibit D-1, D-2, and D-3** and are incorporated herein by reference.

16. The 322 Loan is secured by that certain Security Agreement executed by Debtor on September 11, 2018 (the "**322 SA**"), a true and correct copy of which is attached hereto as **Exhibit**

**E** and incorporated herein by reference. The 322 SA provides CS a security interest in Debtor's rights, titles, and interests in and to certain funds pursuant to a contract with the Carroll County Road Department dated September 7, 2018 (the "**Contract**").

17. To further secure the 322 Loan and to perfect CS's rights in and to the Contract, pursuant to that certain Assignment of Funds (the "**322 Assignment**", a true and correct copy of which is attached hereto as **Exhibit E-1** and incorporated herein by reference), Debtor assigned to CS all of his right, title, and interest in and to the Contract.

18. The 322 Loan Agreement, the 322 Note, the 322 SA, the 322 Assignment, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 322 Loan are hereinafter collectively referred to as the "**322 Loan Documents**."

C. **The 455 Loan**

19. On or about April 24, 2019, CS extended to Debtor a loan bearing loan number 80304455 in the original principal amount of $151,983.50 (the "**455 Loan**").

20. In connection with the 455 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $151,983.50 (the "**Original 455 Note**"). A true and correct copy of the Original 455 Note is attached hereto as **Exhibit F** and incorporated herein by reference.

21. The Original 455 Note was modified by that certain Debt Modification Agreement dated September 1, 2020, by and between CS and Debtor (the "**Original 455 Note Modification**," with the Original 455 Note, the "**455 Note**"). A true and correct copy of the Original 455 Note Modification is attached hereto as **Exhibit F-1** and is incorporated herein by reference.

22. To secure payment of the indebtedness represented by the 455 Note, Debtor executed a Mortgage (the "**455 Mortgage**") which created a lien in favor of CS on and against

certain real property located in Berryville, Carroll County, Arkansas, described below. A true and correct copy of the 455 Mortgage is attached hereto as **Exhibit G** and incorporated herein by reference.

23. The property encumbered by the 455 Mortgage is legally described as follows:

A part of Lot 2, Block 18 of the Original Survey of Berryville, Carroll County, Arkansas and being more particularly described as follows: Commence at the Northeast corner of said Lot 2 for the point of beginning; thence S 20°07'44" E 158.12 feet, thence S 69°52'16" W 61.00 feet, thence N 20°07'44" W 42.00 feet, thence N 69°52'16" E 13.00 feet, thence N 20°07'44" W 43.00 feet, thence S 69°52'16" W 13 feet, thence N 20°07'44" W 73.12 feet, thence N 69°52'16" E 61.00 feet to the point of beginning, containing 0.21 acres more or less and being served by and subject to any rights-of-way or easements existing or of record.

(the "**Commercial Real Property**," with the Residential Real Property, the "**Real Property**"). The Commercial Real Property's street address is commonly known as 112 Caddie Street, Berryville, Arkansas 72616.

24. The 455 Mortgage, after being duly executed and acknowledged, was filed for record in the Office of the Circuit Clerk and Ex-Officio Recorder for Carroll County, Arkansas, on April 25, 2019, at Book 2019 Page 2364.

25. The 455 Loan is further secured by that certain Security Agreement executed by Debtor on April 24, 2019 (the "**First 455 SA**"), a true and correct copy of which is attached hereto as **Exhibit H-1** and is incorporated herein by reference. The First 455 SA provides CS a blanket security interest in all of Debtor's assets (the "**Business Property**").

26. The First 455 SA also provides CS a security interest in three vehicles: (1) a 1998 GMC 6H4, VIN 1GDJ6H1C0WJ517758; (2) a 1991 Chevrolet 3500, VIN

1GCHK34N5ME218805; and (3) a 1999 Chevy 6H4, VIN 1GBJ6H1C5XJ100128[2] (collectively, the "**GM Trucks**").

27. The 455 Loan is further secured by that certain Security Agreement executed by Debtor on September 1, 2020 (the "**Second 455 SA**," with the First 455 SA, the "**455 SAs**"), a true and correct copy of which is attached hereto as **Exhibit H-2** and is incorporated herein by reference. The Second 455 SA provides CS a security interest in another vehicle: a 2000 Ford F650 Super Duty, VIN 3FDNW65A3YMA82786 (the "**Ford Truck**," collectively with the GM Trucks, the "**Trucks**").

28. These security interests (with respect to the GM Trucks) were purchase-money security interests. However, out of an abundance of caution, CS further perfected its security interest in the Trucks as evidenced by the Certificates of Title for each, true and correct copies of which are attached hereto as **Exhibits I-1, I-2, and I-3** and are incorporated herein by reference.

29. The 455 Note, the 455 Mortgage, the 455 SAs, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 455 Loan are hereinafter collectively referred to as the "**455 Loan Documents**."

**D. The 365 Loan**

30. On or about October 15, 2019, CS extended to Debtor a loan bearing loan number 80308365 in the original principal amount of $80,859.53 (the "**365 Loan**"). To evidence the 365 Loan, Debtor executed and delivered to CS that certain Commercial Loan Agreement of the same date (the "**365 Loan Agreement**"), a true and correct copy of which is attached hereto as **Exhibit J** and is incorporated herein by reference.

---

[2] This vehicle was later released as collateral and is not part of the Collateral (defined below) CS is seeking in this case.

FEC/36693.0115/9109173.1-4/14/22

31. In connection with the 365 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $80,859.53 and dated October 15, 2019 (the "**365 Note**"). A true and correct copy of the 365 Note is attached hereto as **Exhibit K** and is incorporated herein by reference.

32. To secure payment of the indebtedness represented by the 455 Note, Debtor executed a Mortgage (the "**365 Mortgage**") which created a lien in favor of CS on and against the Residential Real Property. A true and correct copy of the 365 Mortgage is attached hereto as **Exhibit L** and incorporated herein by reference.

33. The 365 Mortgage, after being duly executed and acknowledged, was filed for record in the Office of the Circuit Clerk and Ex-Officio Recorder for Carroll County, Arkansas, on October 23, 2019, at Book 2019 Page 7811.

34. The 365 Loan is further secured by that certain Security Agreement executed by Debtor on October 15, 2019 (the "**365 SA**"), a true and correct copy of which is attached hereto as **Exhibit M** and is incorporated herein by reference. The 365 SA provides CS a security interest in two vehicles and two pieces of equipment: (1) a 2003 Dodge Ram 3500, VIN 3D7MU46C23G854654; (2) a 1992 PTRB 375, VIN 1XPBDA9X6ND315712; (3) a 1998 Cat D5LX Dozer, Serial Number 51K12175; and (4) a 1997 426B Cat Back Hoe, Serial Number 3711H04A-5 (collectively, the "**Tow Trucks and Equipment**").

35. CS perfected its security interest in the Tow Trucks and Equipment as evidenced by the Certificates of Title and/or UCC-1 Financing Statements filed of record for each, true and correct copies of which are attached hereto as **Exhibits N-1, N-2, N-3** and are incorporated herein by reference.

36. The 365 Note, the 365 Mortgage, the 365 SA, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 365 Loan are hereinafter collectively referred to as the "**365 Loan Documents**."

   **E. The 614 Loan**

37. On or about February 18, 2020, CS extended to Debtor a loan bearing loan number 80310614 in the original principal amount of $43,960.78 (the "**614 Loan**"). To evidence the 614 Loan, Debtor executed and delivered to CS that certain Commercial Loan Agreement of the same date (the "**614 Loan Agreement**"), a true and correct copy of which is attached hereto as **Exhibit O** and is incorporated herein by reference.

38. In connection with the 614 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $43,960.78 and dated February 18, 2020 (the "**614 Note**"). A true and correct copy of the 614 Note is attached hereto as **Exhibit P** and is incorporated herein by reference.

39. To secure payment of the indebtedness represented by the 614 Note, Debtor executed and delivered to CS that certain Security Agreement on February 18, 2020 (the "**614 SA**"), a true and correct copy of which is attached hereto as **Exhibit Q** and is incorporated herein by reference. The 614 SA provides CS a security interest in a 2008 International 4300, VIN 1HTMMAAN38J676389 (the "**2008 International Truck**").

40. This security interest was a purchase-money security interest. However, out of an abundance of caution, CS further perfected its security interest in the 2008 International Truck as evidenced by the Certificate of Title for the same, a true and correct copy of which is attached hereto as **Exhibit R** and is incorporated herein by reference.

41. The 614 Loan Agreement, the 614 Note, the 614 SA, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 614 Loan are hereinafter collectively referred to as the "**614 Loan Documents**."

**F. The 622 Loan**

42. On or about November 13, 2020, CS extended to Debtor a loan bearing loan number 80316622 in the original principal amount of $82,665.43 (the "**622 Loan**"). To evidence the 622 Loan, Debtor executed and delivered to CS that certain Commercial Loan Agreement of the same date (the "**622 Loan Agreement**"), a true and correct copy of which is attached hereto as **Exhibit S** and is incorporated herein by reference.

43. In connection with the 622 Loan, Debtor executed and delivered to CS that certain Promissory Note in the original principal amount of $82,665.43 and dated November 13, 2020 (the "**622 Note**"). A true and correct copy of the 622 Note is attached hereto as **Exhibit T** and is incorporated herein by reference.

44. To secure payment of the indebtedness represented by the 622 Note, Debtor executed and delivered to CS that certain Security Agreement on November 13, 2020 (the "**622 SA**"), a true and correct copy of which is attached hereto as **Exhibit U** and is incorporated herein by reference. The 622 SA provides CS a security interest in two vehicles: (1) a 1993 International 9400, VIN 2HSFHD7R6PC069302 (the "**1993 International Truck**") and (2) a 2012 Ford F550 Bucket Truck, VIN 1FD0X5GY6CEA29560 (the "**2012 Ford**," with the 1993 International Truck, the 2008 International Truck, the Trucks, the Tow Trucks and Equipment, and the Business Property, the "**Collateral**").

45. This security interest was a purchase-money security interest. However, out of an abundance of caution, CS further perfected its security interest in the 1993 International Truck and

2012 Ford as evidenced by the Certificate of Title and Direct Lien Receipt for the same, true and correct copies of which are attached hereto as **Exhibit V-1 and V-2** and which are incorporated herein by reference.

46. The 622 Loan Agreement, the 622 Note, the 622 SA, and all other documents evidencing, securing, or delivering to CS any rights or interests in or to the 622 Loan are hereinafter collectively referred to as the "**622 Loan Documents**."

47. The 175 Note, the 322 Note, the 455 Note, the 365 Note, the 614 Note, and the 622 Note are hereinafter collectively referred to as the "**Notes**." The 175 Mortgage, the 455 Mortgage, and the 365 Mortgage are hereinafter collectively referred to as the "**Mortgages**." The 175 Loan, the 322 Loan, the 455 Loan, the 365 Loan, the 614 Loan, and the 622 Loan are hereinafter collectively referred to as the "**Loans**." The 175 Loan Documents, the 322 Loan Documents, the 455 Loan Documents, the 365 Loan Documents, the 614 Loan Documents, and the 622 Loan Documents, and any and all other documents evidencing, securing, or delivering to CS any rights or interests in any of the Loans are hereinafter collectively referred to as the "**Loan Documents**."

48. The Loans were cross collateralized pursuant to the Loan Documents.

**G. Defendants' Default Under the Loan Documents**

49. The Notes required Debtor to make payments as provided therein. The Loan Documents provide that Debtor would be in default in the event that he failed to make any payment when due thereunder.

50. Debtor failed to make payments when due under the Notes and was in default under the Loan Documents, which led to the Foreclosure Action.

51. As of the filing of the Debtor's 2022 Case, Debtor was indebted to CS in the following amounts:

|  | Principal | Interest through 2/9/2022 | Late Charges | Taxes | Escrow Balance | Total |
|---|---|---|---|---|---|---|
| **Loan 175** | $154,877.23 | $6,084.02 | $341.64 | $1,172.70 | [$787.60] | $161,687.99 |
| **Loan 322** | $19,972.89 | $1,183.21 | $120.00 | -- | -- | $21,276.10 |
| **Loan 455** | $138,150.45 | $8,586.43 | $353.04 | -- | -- | $147,089.92 |
| **Loan 365** | $63,555.56 | $4,317.39 | $394.20 | -- | -- | $68,267.15 |
| **Loan 614** | $36,181.76 | $3,354.73 | $257.69 | -- | -- | $39,794.18 |
| **Loan 622** | $73,364.09 | $4,104.26 | $631.60 | -- | -- | $78,099.95 |
|  |  |  |  |  |  | **$516,215.29.** |

II. RELIEF REQUESTED

52. Pursuant to Section 362(d)(1) of the United States Bankruptcy Code, the court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property."

53. "A creditor may show that it lacks adequate protection by presenting evidence of no equity in the property, depreciating property values, the non-payment of taxes or other senior liens, the failure to insure the property, an increase in secured debt due to interest accruals or otherwise, the failure to maintain the property, or other factors jeopardizing the creditor's position." *In re May*, 4:02-bk-14785 E (Chapter 7), 2002 Bankr. LEXIS 1847, at *7 (Bankr. E.D. Ark. July 18, 2002); *see also* 11 U.S.C. § 362(g) (debtors bear the burden of proof on adequate protection).

54. For cause, including lack of adequate protection, the automatic stay should be terminated, lifted, or annulled with respect to the collateral securing CS's indebtedness pursuant to 11 U.S.C. § 362(d). There have been no payments made on the Loans since September 2021.

CS has been informed (and the Debtor acknowledged in the first meeting of creditors) that some of the collateral in Debtor's possession may be in various states of disrepair. CS has concerns regarding the value (and depreciation) of its collateral.

55. Debtor has failed to maintain insurance on the Commercial Real Property.

56. Some of the collateral (the 1993 International Truck, 2012 Ford, and 2008 International Truck) is owned by a separate legal entity, G & I Towing and Recovery, LLC, and that collateral is property of the LLC, not the Debtor. The Debtor has no legal ownership interest in the collateral.

57. Upon information and belief, the residence located at the Residential Real Property has burned down. The 175 Mortgage provides in pertinent part:

> Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.

Ex. B. To the extent the proceeds of the insurance policy for the Residential Real Property may be property of the estate pursuant to 11 U.S.C. § 541, CS also seeks relief from stay to proceed to collect those funds from the third-party insurance company.

58. Finally, the Loan Documents provide that Debtor will pay CS's attorneys' fees and other costs of collection upon default; therefore, CS Bank continues to apply its costs of recovery, including attorneys' fees, to the outstanding amount owed by Debtor.

59. CS requests that the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived so that it may protect and secure collateral not already in its possession.

60. In the alternative, CS prays that it be granted adequate protection.

61. CS reserves the right to plead further following discovery or otherwise.

**WHEREFORE**, CS Bank prays that this Court terminate, lift, or annul the automatic stay with respect to all or a portion of its collateral securing the indebtedness, or, in the alternative, that adequate protection payments be required, for its costs and attorneys' fees, and for any other relief to which it may be entitled.

Respectfully submitted,

Kael K. Bowling, AR Bar 2016220
Lindsey Emerson Raines, AR Bar 2016199
FRIDAY, ELDREDGE & CLARK, LLP
400 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201
Office: 501-376-2011
lraines@fridayfirm.com

By: */s/ Lindsey Emerson Raines*
Lindsey Emerson Raines

*Counsel for CS Bank*

## CERTIFICATE OF SERVICE

I, Lindsey Emerson Raines, do hereby certify that a true and correct copy of the above and foregoing has been provided to the following attorneys of record by electronic mail through the Electronic Case Filing System (if registered) and by First Class mail, postage prepaid (where indicated below) on this 14th day of April 2022.

Matthew D. Mentgen
Mentgen Law
PO Box 164439
Little Rock, AR 72216

Billy G. Scallorn (via First Class mail)
239 CR 426
Berryville, AR 72616

Joyce Bradley Babin
Chapter 13 Standing Trustee
PO Box 8064
Little Rock, AR 72203

U.S. Trustee
Office of U.S. Trustee
200 W. Capitol, Ste. 1200
Little Rock, AR 72201

*/s/ Lindsey Emerson Raines*
Lindsey Emerson Raines